UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:15-CV-00485-BR

| | | |
|---|---|---|
| SANDRA HARMON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | ORDER |
| | ) | |
| CUMBERLAND COUNTY BOARD OF | ) | |
| EDUCATION A/K/A CUMBERLAND | ) | |
| COUNTY SCHOOL DISTRICT NORTH | ) | |
| CAROLINA, *et al.*, | ) | |
| Defendants. | ) | |

This matter is before the court on the motion to dismiss filed by defendants Cumberland County Board of Education ("the Board"); Marie Pierce-Ford, Principal of Luther Nick Jeralds Middle School; Larissa Perkins, Assistant Principal of Luther Nick Jeralds Middle School; Stafford Daniels, Assistant Principal of Luther Nick Jeralds Middle School; Dr. James McLauchlin, Chair of the Board; Dr. Frank Till, Superintendent of Cumberland County Schools; and Dr. Joseph Locklear, deceased, former Associate Superintendent of Cumberland County Schools. (DE # 15.) Also before the court are plaintiff's motions for summary judgment, (DE # 18), and to expedite ruling on her motion for summary judgment, (DE # 24). The motions raised have been fully briefed and are ripe for disposition.

## I. FACTS

In 2014, plaintiff was employed by the Board as a special education teacher pursuant to a year-to-year probationary contract. (Am. Compl., DE # 1-2, at 64.)[1] For the 2014-2015 school year, plaintiff was assigned by the Board to teach Severely Emotionally Disturbed ("SED")

---
[1] Plaintiff verified the amended complaint.

students at Luther Nick Jeralds Middle School, where Pierce-Ford was principal. (Id.) Pierce-Ford later informed plaintiff that she would be the lead math resource teacher as well. (Id.) As a result, plaintiff's teaching schedule was structured so that the SED students would transition to resource classrooms for parts of the school day instead of remaining in a self-contained classroom with plaintiff as their full-time teacher. (Id.)

      Plaintiff alleges that, at the start of the 2014-2015 school year, she notified Pierce-Ford that she was "starting [her] third year as a probationary teacher, and [she] needed to obtain [a performance rating of] proficient in order to receive [her] five year license." (Id. at 68.) Soon after, plaintiff became concerned that her teaching schedule exacerbated the SED students' behavioral issues. (Id. at 64-65.) Plaintiff communicated her concern to Pierce-Ford, and also alerted her that the SED students' Individualized Education Plans ("IEPs") required that they be placed in a self-contained classroom rather than a resource or regular education classroom. (Id. at 65.) When Pierce-Ford did not implement the changes plaintiff suggested, plaintiff notified the Director of the Exceptional Children's Department of Cumberland County Schools regarding the situation. (Id. at 65, 71.) According to plaintiff, Pierce-Ford subsequently approached her about "putting her business out in the county" and instructed her "to follow the schedule." (Id. at 65-66.) In September 2014, following another complaint by one of the school's behavioral coaches, an evaluation was performed by the Behavioral Support Supervisor for Cumberland County Schools. (Id. at 66.) After the evaluation, Pierce-Ford adjusted plaintiff's teaching schedule to allow the SED students to receive full-time instruction in a self-contained classroom. (Id. at 66, 71.) Plaintiff alleges that from that point forward, Pierce-Ford discontinued her observations of plaintiff's classroom and limited her interaction with plaintiff. (Id. at 67.)

On 13 March 2015, plaintiff received a letter from Pierce-Ford notifying her of the superintendent's recommendation not to renew her probationary contract for the following school year. (Id.) In the letter, Pierce-Ford indicated that the primary reasons for the non-renewal recommendation were plaintiff's "inability to maintain effective classroom management of students" and "personal behavior that was insubordinate and contemptuous." (Id.) The next day, on 14 March 2015, plaintiff filed a complaint with the Board challenging the non-renewal recommendation. (Id.)

After filing her complaint, plaintiff underwent two separate classroom observations by Perkins and Daniels, and received "proficient" ratings from both. (Id. at 67-68.) Subsequently, on 28 April 2015, Pierce-Ford completed plaintiff's summary evaluation, in which she rated plaintiff in the lower category of "developing." (Id. at 68, 72.) Plaintiff met with Associate Superintendent Dr. Joseph Locklear to discuss her displeasure with the summary evaluation. (Id. at 69.) At that meeting, plaintiff conveyed her concern that Pierce-Ford had retaliated against her by fabricating the observations in the summary evaluation and intentionally giving her a low performance rating. (Id.) Plaintiff alleges that Dr. Locklear ordered an additional evaluation, and guaranteed her a job in the next academic year. (Id. at 69, 73.) According to plaintiff, Pierce-Ford later told her "she was not making any changes to the summary evaluation despite the additional evaluation." (Id. at 69). On 14 May 2015, Dr. Locklear reassigned plaintiff to teach at J.W. Coon Elementary School, where she finished out her contract. (Id. at 70.)

Following the non-renewal of plaintiff's contract, on 1 June 2015, Cumberland County Schools notified the North Carolina Department of Public Instruction of its recommendation to withhold plaintiff's continuing teaching license due to her failure to successfully complete the evaluation process. (See Defs.' Ex. 2, DE # 15-2.) Plaintiff subsequently filed a complaint with

3

the Board seeking review of Pierce-Ford's summary evaluation on 11 June 2015. (Am. Compl., DE # 1-2, at 62.) Plaintiff alleges that she never received a response to her request. (Id.)

On 19 August 2015, plaintiff, proceeding *pro se*, commenced this action in the North Carolina Superior Court by filing a verified complaint, asserting a retaliation claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a). (Compl., DE # 1-2, at 3-21.) Plaintiff later amended her complaint to add claims under 42 U.S.C. § 1983 for alleged violations of her rights to equal protection and due process under the Fourteenth Amendment. (Am. Compl., DE # 1-2, at 59-76.) Defendants removed the case to federal court on 18 September 2015. (DE # 1-3.) On 15 October 2015, defendants filed the instant motion to dismiss plaintiff's complaint. (DE #15.) Plaintiff filed a response in opposition to defendants' motion to dismiss, in which she moved for summary judgment. (DE # 18.) On 3 November 2015, defendants filed a notice of their intent not to file a reply brief. (DE # 20.) Plaintiff filed a motion to expedite the ruling on her motion for summary judgment on 14 January 2016. (DE # 24.)

## II. ANALYSIS

Defendants move to dismiss plaintiff's amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Defs.' Mem., DE # 16, at 5-17.) Defendants argue that plaintiff's amended complaint fails to establish all the necessary elements for a retaliation claim under Title VII, (id. at 6-8), and all the necessary elements for an equal protection claim, (id. at 8-10). In addition, defendants contend that plaintiff cannot establish a deprivation of due process because she has not alleged a protected liberty or property interest. (Id. at 10-16.)

In order to withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

4

face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When reviewing a motion to dismiss, the court must construe the complaint's factual allegations in the light most favorable to the plaintiff and must accept as true all well-pleaded allegations. E.I. du Pont de Nemours and Co. v. Kolon Indust., Inc., 637 F.3d 435, 440 (4th Cir. 2011). The court, however, "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkts., Inc. v. J.D. Assocs., Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000) (citation omitted). In determining a motion to dismiss, the court may take judicial notice of matters of public record. Philips v. Pitt Cty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citation omitted). The court may also "consider documents attached to the complaint, . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Id.

### A. Title VII Retaliation Claim

Plaintiff first alleges that Pierce-Ford gave her a poor summary evaluation in retaliation for the "county intervention that transpired" after she advocated on behalf of her SED students. (Am. Compl., DE # 1-2, at 68.) Title VII prohibits retaliation by an employer against an employee because she "has opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3(a). The elements of a *prima facie* retaliation claim under Title VII are: "(1) engagement in a protected activity; (2) adverse employment action; and, (3) a causal link between the protected activity and the employment action." Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). While a Title VII plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, see Swierkiewicz

5

v. Sorema N.A., 534 U.S. 506, 510-15 (2002), "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

With regard to the first element, plaintiff asserts that she engaged in protected activity when she complained to her county supervisor about Pierce-Ford's failure to adhere to the SED students' IEPs, which she believed to be a violation of the Education of the Handicapped Act. (Pl.'s Response, DE # 18, at 5-6.) "A complaint is protected as opposition activity if it is a response to an employment practice that is, or that the plaintiff reasonably believes is, unlawfully discriminatory." Pettis v. Nottoway Cty. Sch. Bd., 592 F. App'x. 158, 160 (4th Cir. 2014). "Title VII is not a general bad acts statute, however, and it does not prohibit [] employers 'from retaliating against an employee based on her opposition to discriminatory practices that are outside the scope of Title VII." Bonds v. Leavitt, 629 F.3d 369, 384 (4th Cir. 2011). "Oppositional activity must be directed to 'an unlawful employment practice' under Title VII." DeMasters v. Carilion Clinic, 796 F.3d 409, 417 (4th Cir. 2015) (citing 42 U.S.C. § 2000e-3(a)). Unlawful employment practices that an employee may oppose include practices that "discriminate against an individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Bonds, 629 F.3d at 384.

Here, plaintiff's complaint was intended to bring attention to what she believed to be the discriminatory treatment of the SED students, who have histories of "severe behavior, psychological, clinical, mental health, or emotional issues." (Am. Compl., DE # 1-2, at 64.) As plaintiff's oppositional activity concerned disability discrimination, plaintiff could not have reasonably believed that she was opposing an employment practice made unlawful by Title VII. See Crow v. McElroy Coal Co., 290 F. Supp. 2d 693, 696 (N.D. W. Va. 2003) (noting "disability

6

is not a protected class under title VII" and dismissing a Title VII discrimination claim based on alleged disability).  Plaintiff does not allege that she was subjected to retaliation because she opposed any unlawful employment practice based on "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  Because plaintiff does not allege retaliation for any Title VII protected activity, she has failed to state a cognizable claim under Title VII.

### B. Equal Protection Claim

Plaintiff also raises an equal protection claim based on Pierce-Ford's alleged retaliatory conduct.  (Am. Compl., DE # 1-2, at 74.)  Plaintiff specifically asserts that Pierce-Ford "intentionally included observations [in her summary evaluation] that she knew were conducted and recorded in violation of the timeframe required by the North Carolina Teacher Evaluation Process."  (Id.)  She further claims that the summary evaluation excluded "the observation data results of the other two administrators, as well as the results of academic growth of [her] students."  (Id. at 75.)

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  This clause "is essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  "In order to survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus."  Equity In Athletics, Inc. v. Dept. of Educ., 639 F.3d 91, 108 (4th Cir. 2011).

Even construing plaintiff's allegations liberally and in her favor, the court concludes that plaintiff has failed to plead sufficient facts to establish an equal protection claim.  Plaintiff does

7

not identify herself as a member of a protected class and fails to allege disparate treatment motivated by such membership.[2] Furthermore, plaintiff does not allege that she has been treated differently from any similarly situated person, nor does she identify who she considers to be similarly situated under an equal protection analysis. While *pro se* litigants are held to less stringent pleading standards than attorneys, the court is not required to "accept as true legal conclusions or unwarranted factual inferences." See Morgan v. Church's Fried Chicken, 886 F.2d 721, 723 (4th Cir. 1989). Pierce-Ford's alleged failure to adhere to established policy and procedure, without more, does not state a plausible claim for relief.

### C. Due Process Claim

Plaintiff further asserts that the Board violated her Fourteenth Amendment due process rights by not renewing her probationary teaching contract and recommending to the North Carolina State Board of Education ("SBOE") that she be denied a continuing teaching license. (Am. Compl., DE # 1-2, at 62.) The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. Procedural due process generally requires "fair notice of impending state action and an opportunity to be heard." Snider Int'l Corp. v. Town of Forest Heights, Md., 739 F.3d 140, 146 (4th Cir. 2014). To establish a procedural due process claim, a plaintiff must plausibly allege: (1) a constitutionally cognizable liberty or property interest; (2) that she was deprived of that interest by state action; and (3) the procedures employed to deprive her of that interest were constitutionally inadequate. See Kendall v. Balcerzak, 650 F.3d 515, 528 (4th Cir. 2011).

---

[2] To the extent that plaintiff's claim is based on a class-of-one theory of equal protection, such a claim "has no place in the public employment context." Engquist v. Oregon Dept. of Agr., 553 U.S. 591, 594 (2008).

### 1. Continued Employment

Plaintiff first claims that she has not been able to teach due to the nonrenewal of her probationary contract. (Am. Compl., DE # 1-2, at 62.) She maintains that she had both a legally protected liberty interest and a contractual right in being hired. (Id. at 62-63.) Defendants argue that, as a probationary teacher, plaintiff had no protected liberty or property interest in continued employment because such rights are afforded only to teachers who have obtained career status. (Defs.' Mem., DE # 16, at 10-13.)

A procedural due process right is implicated "when governmental action threatens a person's liberty interest in his reputation and choice of occupation." Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 307 (4th Cir. 2006). However, the Supreme Court has also recognized that "it would stretch the concept to[o] far 'to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." Bishop v. Wood, 426 U.S. 341, 348 (1976) (quoting Board of Regents v. Roth, 408 U.S. 564, 575 (1972)). Thus, for a liberty interest to be implicated, "a plaintiff must allege that the charges against him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." Sciolino v. City of Newport News, VA., 480 F.3d 642, 646 (4th Cir. 2007).

In her responsive brief, plaintiff argues that the non-renewal decision, which was based on Pierce-Ford's fabricated complaints regarding her character and job performance, "blemish[ed]" her reputation and foreclosed her current ability to find work as a teacher. (Pl.'s Resp., DE # 19, at 8.) The Fourth Circuit has explained that in order for a liberty interest to be implicated from the nonrenewal of a probationary teaching contract, there must be some implication of serious character defects such as dishonesty or immorality that impose a stigma in

9

connection with the nonrenewal and foreclose plaintiff's freedom to take advantage of future employment opportunities. See Sigmon v. Poe, 564 F.2d 1093, 1096 (4th Cir. 1977). Here, plaintiff alleges that the stated reasons for the nonrenewal of her probationary teaching contract were her inability to manage her classroom and her insubordinate behavior. (Am. Compl, DE # 1-2, at 62.) Allegations of unsatisfactory job performance or insubordination are not sufficiently stigmatizing to establish a deprivation of a liberty interest. See Ridpath, 447 F.3d at 308-09; Dunn v. Town of Emerald Isle, No. 89-1829, 1990 WL 180977, at *4 (4th Cir. Nov. 26, 1990) (unpublished). Because plaintiff has not alleged that Pierce-Ford made statements in connection with her non-renewal "that imply . . . serious character defects" and not "simply incompetence," she has failed to allege a constitutionally protected liberty interest in her continued employment. Ridpath, 447 F.3d at 308-09.

Plaintiff also appears to assert a property interest in continued employment. (Am. Compl., DE # 1-2, at 73.) Plaintiff does not challenge defendants' contention that the terms of employment for probationary teachers, which are governed by North Carolina General Statute § 115C-325(M), do not create a property interest under the Fourteenth Amendment. See Sigmon, 564 F.2d at 1096. Instead, plaintiff argues that, despite her status as a probationary employee, the representations made to her by Dr. Locklear gave her a reasonable expectation that she would have a teaching job the next academic year. (Am. Compl., DE # 1-2, at 69, 70, 73.)

In order to have a protected property interest in continued employment, a person must possess a legitimate claim of entitlement to it. Ridpath, 447 F.3d at 308 n.14 (citing Roth, 408 U.S. at 577-78). "A property interest in employment can, of course be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law." Bishop v. Wood, 426 U.S. 341, 344 (1976). In North

10

Case 5:15-cv-00485-BR   Document 25   Filed 05/05/16   Page 10 of 14

Carolina, statements by a superior cannot form the basis of an implied contract unless the official possesses "the actual authority to alter the employment relationship." Woods v. City of Wilmington, 480 S.E.2d 429, 433-34 (N.C. App. 1997). Under North Carolina law, "local boards of education . . . employ teachers upon the recommendation of the superintendent." N.C.G.S. § 115C-325.3(b). However, the superintendent's recommendation "is only advisory" and "ultimate responsibility rests with the board" to decide whether to renew a teacher's contract. Abell v. Nash Cty. Bd. of Educ., 321 S.E.2d 502, 506 (N.C. App. 1984). Therefore, even assuming Dr. Locklear promised plaintiff that her teaching job was secure, he did not have the authority to renew plaintiff's probationary contract for the following school year. Accordingly, plaintiff's allegations do not state a claim for deprivation of a protected property interest based on an implied promise of continued employment.

Because plaintiff has failed to allege sufficient facts showing that she possessed either a liberty or property interest in her continued employment, she cannot state a claim for violation of her due process rights.

### 2. Teaching License

Plaintiff also alleges that by recommending to the SBOE that she be denied a continuing teaching license, the Board deprived her of her property interest in her teaching license without due process of law. (Am. Compl., DE # 1-2, at 62.) Plaintiff claims that the Board was aware of her complaint regarding the fabricated allegations in Pierce-ford's summary evaluation but, nonetheless, relied on the summary evaluation in issuing its licensing recommendation to the SBOE. (Id. at 62, 73-74.) She maintains that in the absence of the fabricated allegations in the summary evaluation, she would have obtained the "proficiency" rating required to receive a continuing teaching license. (Id. at 73-74.)

"A property interest requires more than a 'unilateral expectation' that a permit or license will be issued; instead, there must be a 'legitimate claim of entitlement.'" Biser v. Town of Bel Air, 991 F.2d 100, 104 (4th Cir. 1993) (quoting Roth, 408 U.S. at 577). Under North Carolina law, the SBOE has "entire control of licensing all applicants for teaching positions in all public schools" and it prescribes "the rules and regulations for the renewal and extension of all licenses." See N.C.G.S. § 115C-296(a). Consistent with this authority, the SBOE has adopted a policy, TCP-A-004, which sets forth the licensure standards and requirements for probationary teachers. (See Defs.' Ex. 1, DE # 15-1.) Pursuant to Section 4.00 of this policy "[i]nitial (Standard Professional 1) licenses are issued to teachers with fewer than three years of appropriate teaching experience (normally considered to be public school experience) in their initial licensure area." (See id. at 1.) This policy also sets forth the process by which a teacher's initial (Standard Professional 1) license is converted to a continuing (Standard Professional 2) license. (Id.) Section 4.90 provides that "[a] principal must rate a probationary teacher as 'proficient' on all five NC Professional Teaching Standards on the most recent Teacher Summary Rating Form before recommending a teacher for a Standard Professional 2 license." (Id.)

As plaintiff acknowledges in her complaint, she did not receive a "proficient" rating in all of the five Professional Teaching Standards on the Teacher Summary Rating Form completed by Pierce-Ford at the end of plaintiff's third year as a probationary teacher. (Am. Compl., DE # 1-2, at 68.) Plaintiff also does not dispute that the Board's recommendation to the SBOE was based upon her failure to achieve a performance rating of "proficient" in all five NC Professional Standards. In this instance, plaintiff was fully aware that the conversion of her license was conditioned on her performance rating and was not guaranteed. Although plaintiff claims a

12

protectable property interest in her continuing teaching license, she has failed to allege that she had anything more than a desire for her continued licensure. Because plaintiff failed to achieve the benchmark established by the SBOE to obtain a continuing license, she has no "legitimate claim to it." Accordingly, the court concludes that plaintiff did not possess a cognizable property interest in her teaching license.

Even assuming that plaintiff could establish a protected property interest in her initial teaching license, plaintiff has failed to sufficiently allege that her procedural due process rights were violated. Plaintiff claims that after receiving notification of the licensing decision, she "filed a complaint . . . with the board seeking review of the summary observation of Ms. Ford, and to date, [she has] yet to receive an acknowledgement of receipt of [her] complaint by the school board." (Am. Compl., DE # 1-2, at 62.) The SBOE has made clear that any challenge to a licensing decision must be at the state level pursuant to North Carolina's Administrative Procedure Act:

> 4.100 Due Process
>
> Licensing is a state decision and cannot be appealed at the local level. Any teacher not recommended for conversion from an initial (Standard Professional 1) license to a continuing (Standard Professional 2) license may have that action reviewed by filing a contested case petition in accordance with Article 3 of Chapter 150B of the General Statutes. . . .

(See Defs.' Ex. 1, DE # 15-1.) Plaintiff does not dispute that, after the recommendation was made, she was notified via letter of the process for appealing the decision of the SBOE. (See Defs.' Ex. 3, DE # 15-3.) Plaintiff did not appeal the SBOE's decision not to convert her license to the Office of Administrative Hearings. Therefore, she cannot pursue a claim for violation of due process. See Kendall v. Balcerzak, 650 F.3d 515, 528 (4th Cir. 2011) (noting that failure to utilize existing procedure precludes a due process violation).

13

## III. CONCLUSION

For the reasons stated herein, defendants' motion to dismiss, (DE # 15), is GRANTED. Plaintiff's motions are DENIED as moot. The Clerk is DIRECTED to enter judgment in favor of defendants and close this case.

This 5 May 2016.

                                              W. Earl Britt
                                              Senior U.S. District Judge